Cite as 2026 Ark. App. 4

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-24-209

| | |
|---|---|
| LRS SOUTH, LLC<br><br>APPELLANT<br><br>V.<br><br>BENTON COUNTY SOLID WASTE MANAGEMENT DISTRICT AND THE BENTON COUNTY SOLID WASTE MANAGEMENT DISTRICT BOARD<br>APPELLEES | Opinion Delivered January 7, 2026<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-23-1687]<br><br>HONORABLE JOHN R. SCOTT, JUDGE<br><br>REVERSED AND REMANDED |

**WENDY SCHOLTENS WOOD, Judge**

This is a statutory-interpretation case involving several solid-waste-management statutes. LRS South, LLC ("LRS South"), appeals the dismissal of its complaint for declaratory judgment and injunctive relief against Benton County Solid Waste Management District ("District") and the Benton County Solid Waste Management District Board ("Board") (collectively, "appellees"). For reversal, LRS South argues that the circuit court erred in finding (1) that its proposed solid-waste transfer station is a solid-waste disposal facility within the meaning of Arkansas Code Annotated section 8-6-222 (Repl. 2022) and (2) that the District could adopt more restrictive standards than those established by state law for its proposed transfer station. We agree with LRS South on its first point, and we reverse and remand for further proceedings.

I. *Background Facts and Procedural History*

LRS South, a waste-management and recycling company, sought to build and operate a solid-waste transfer station in Benton County. To do so, it was required to obtain a series of permits pursuant to rules promulgated by the Arkansas Pollution Control and Ecology Commission ("Commission"), Arkansas Department of Environmental Quality ("ADEQ"), and the District. The District is a regional solid-waste-management district that provides solid-waste-management programs for Benton County pursuant to the Arkansas Solid Waste Management Act (the "Act"), codified at Arkansas Code Annotated sections 8-6-201 to -223 (Repl. 2022). The Board is responsible for providing a solid-waste-management system for the District.

LRS South was first required to obtain a "Certificate of Need" from the District and its Board. It was then required to obtain a permit from ADEQ. In August 2022, LRS South applied to the District for a Certificate of Need to construct and operate a new transfer station at 1234 East Cloverdale Road in Rogers. The proposed transfer station is not within two hundred feet of Beaver Lake, but the parties stipulated that it is within two miles of Beaver Lake. The District subsequently initiated a thirty-day public-comment period and scheduled a public hearing to consider the application. On October 25, shortly before the Board was scheduled to meet and review the application, the District informed LRS South that the location of its proposed transfer station did not meet the requirements of District Rule 17.02, which prohibits locating a solid-waste facility within two miles of certain bodies of water, including Beaver Lake. *See*

2

https://www.sos.arkansas.gov/uploads/rulesRegs/Arkansas%20Register/2014/march14Reg/207.00.13-001.pdf (archived at https://perma.cc/Z75S-F86D). On October 27, LRS South withdrew its application for a Certificate of Need.

On June 27, 2023, LRS South filed a complaint for declaratory judgment and injunctive relief in the Benton County Circuit Court against the appellees. With respect to LRS South's proposed transfer station, it alleged that "Rule 17.02's setback requirement is more stringent than allowed by state law." LRS South, citing Commission Solid Waste Management Rule 22.902(a)(5), alleged that state law provides that new solid-waste transfer stations "shall not be located within . . . [t]wo hundred (200) feet to an existing residence, place of business, or drinking water supply not owned or leased by the applicant," and its proposed transfer station is in compliance with Rule 22.902(a)(5). *See* https://www.adeq.state.ar.us/regs/files/reg22_final_080426.pdf (archived at https://perma.cc/E3FX-9CC8). Accordingly, LRS South sought a declaratory judgment that the two-mile-setback requirement is partially invalid and a permanent injunction preventing the appellees from applying and enforcing the two-mile-setback requirement to LRS South's proposed transfer station.

A bench trial was held on December 5, 2023.[1] At the conclusion of trial, the circuit court orally denied LRS South's complaint. On December 11, the court entered an order denying and dismissing the complaint:

---

[1]An agreement on stipulation of facts was introduced as a joint exhibit at trial.

3. The court finds that pursuant to Arkansas code (the Arkansas Solid Waste Management Act) a "transfer station" is a facility used to manage the removal, compaction, and transfer of solid waste from collector vehicles and smaller vehicles to greater capacity transport vehicles. Based on the aforementioned statutory definition a transfer station is not a solid waste disposal site but instead a solid waste disposal facility.

4. The court further finds that pursuant A.C.A § 8-6-222, the phrase "solid waste disposal" first modifies and describes the noun "sites". The conjunction "and" makes the aforementioned phrase then modify the noun "facilities". The court finds that the statute allows the defendant to adopt more restrictive standards to both solid waste disposal sites and to solid waste disposal facilities which the defendant has done. Further the court concludes that a solid waste disposal site is indeed a final resting place for a solid waste while a solid waste disposal facility is some location prior to the final resting place i.e. a transfer station.

On December 21, LRS South filed a motion for new trial, which was denied on December 27. LRS South filed its notice of appeal on January 9, 2024, and this appeal followed.

II. *Points on Appeal*

LRS South argues two points on appeal: (1) the circuit court erred in finding that its proposed transfer station is a solid-waste disposal facility under Arkansas Code Annotated section 8-6-222, and (2) the circuit court erred in finding that the District could adopt more restrictive standards than those established by state law for its proposed transfer station.

A. Standard of Review and Applicable Law

Appellate courts review appeals from bench trials, including declaratory judgments, under the clearly erroneous standard. *Pop-A-Duck, Inc. v. Gardner*, 2022 Ark. App. 88, at 5, 642 S.W.3d 220, 225. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *Id.*, 642 S.W.3d at 225. We review issues of

statutory interpretation de novo. *Benton Cnty. Reg'l Solid Waste Mgmt. Dist. v. Waste Mgmt. of Ark., Inc.*, 2023 Ark. App. 538, at 6, 680 S.W.3d 88, 92.

The basic rule of statutory construction is to give effect to the intent of the legislature. *Id.* at 7, 680 S.W.3d at 92. When the language of a statute is plain and unambiguous, legislative intent is found in the ordinary meaning of the language used. *Id.*, 680 S.W.3d at 92. Statutory language is ambiguous if it is open to two or more constructions or if it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Hotels.com, L.P. v. Pine Bluff Advert. & Promotion Comm'n*, 2024 Ark. 86, at 7, 688 S.W.3d 399, 405. When a statute is ambiguous, we must interpret it according to legislative intent, and our review becomes an examination of the whole act. *Id.*, 688 S.W.3d at 405.

### B. Solid-Waste Transfer Station and Solid-Waste Disposal Facility

In its first point on appeal, LRS South argues that the circuit court erred in finding that its proposed transfer station is a solid-waste disposal facility under section 8-6-222. It first argues that the circuit court ignored the plain meaning of the word "disposal" in making its finding. Alternatively, LRS South contends that, even if the applicable statutes are ambiguous, the circuit court incorrectly applied the principles of statutory construction to determine the meaning of the phrase "solid-waste disposal facility." The appellees respond that the statutes at issue are subject to multiple interpretations, and therefore, "it is necessary to take note of the relevant accompanying statutes." Referencing other relevant statutes, the

5

appellees contend that the legislature intended that "solid waste disposal sites and facilities" include "transfer stations."

Several statutes in the Act are relevant to our analysis. Arkansas Code Annotated section 8-6-712(b) provides that "[t]he districts shall issue rules or regulations which are consistent with and in accordance with but no more restrictive than all applicable environmental protection performance standards adopted by state law or incorporated by reference from federal law." An exception to this general rule is found in Arkansas Code Annotated section 8-6-222, which states that "[r]egional solid waste management boards may adopt more restrictive standards for the location, design, construction, and maintenance of solid waste disposal sites and facilities than the state government or the United States Government."

Arkansas Code Annotated section 8-6-203(4) states that "'[d]isposal site' means any place at which solid waste is dumped, abandoned, or accepted or disposed of for final disposition by incineration, landfilling, composting, or any other method." Additionally, a "transfer station" is defined by statute as "a facility that is used to manage the removal, compaction, and transfer of solid waste from collection vehicles and other small vehicles to greater capacity transport vehicles." Ark. Code Ann. § 8-6-203(22). "Solid-waste disposal facility" is not defined in the Act.

In interpreting the statutes in question, we first consider the plain meaning of the statutes. When the language of a statute is not ambiguous, the analysis need not go further,

and we will not search for legislative intent; rather, the intent is gathered from the plain meaning of the language used. *Hotels.com, L.P.*, 2024 Ark. 86, at 6–7, 688 S.W.3d at 405.

Although "disposal facility" is not defined within the Act, the circuit court found that the phrase "solid waste disposal" within section 8-6-222 modifies both the terms "sites" and "facilities."[2] *See generally* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 147–51 (2012) (discussing the general rule that when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive modifier normally applies to the entire series). Thus, the circuit court found that, pursuant to section 8-6-222, regional solid-waste-management boards may adopt more restrictive location standards for solid-waste disposal sites and solid-waste disposal facilities. Because "disposal" modifies "sites" and "facilities," we see no error in the circuit court's finding that the District was allowed to adopt more restrictive standards for solid-waste disposal sites and solid-waste disposal facilities.

However, the circuit court further found "that a solid waste disposal site is indeed a final resting place for a solid waste while a solid waste disposal facility is some location prior to the final resting place i.e. a transfer station." Again, "disposal site" is defined by statute as "any place at which solid waste is dumped, abandoned, or accepted or disposed of for final disposition by incineration, landfilling, composting, or any other method." Ark. Code Ann. § 8-6-203(4). Looking at the plain language here, the statutory definition of "disposal site"

---

[2]In their respective briefs on appeal, the parties agree that the circuit court's finding is correct.

includes the phrase "for final disposition[,]" indicating finality. Given that the term "disposal" modifies "site" and "facility," the same finality applies to both phrases. Indeed, Merriam Webster defines "disposal" as "systematic destruction[,] *especially*: destruction or transformation of garbage." Merriam-Webster.com, https://www.merriam-webster.com/dictionary/disposal (accessed Dec. 8, 2025) (archived at https://perma.cc/UY86-P678). The difference in "disposal site" and "disposal facility" is that "site" is defined by statute as "any place," whereas "facility," although undefined by statute, means "something (such as a hospital) that is built, installed, or established to serve a particular purpose." *See id.*, https://www.merriam-webster.com/dictionary/facility (accessed Dec. 8, 2025) (archived at https://perma.cc/HKN6-HPPH). In other words, a "facility" is something that is built or installed, whereas a "site" is any area. However, both terms are modified by "disposal," i.e., "for final disposition." Thus, we hold that the circuit court's finding that "a solid waste disposal facility is some location prior to the final resting place i.e. a transfer station" is inconsistent with the plain language of sections 8-6-203 and 8-6-222.

Next, we must determine whether the circuit court erred in finding that "a transfer station is . . . a solid waste disposal facility." Again, "transfer station" is statutorily defined as "a facility that is used to manage the removal, compaction, and transfer of solid waste from collection vehicles and other small vehicles to greater capacity transport vehicles." Ark. Code Ann. § 8-6-203(22). Under this definition, a transfer station is not a facility "for final disposition" but one to "manage the removal, compaction, and transfer of solid waste" from certain smaller vehicles to larger vehicles. Thus, it does not fit within the plain meaning of a

8

disposal facility, and under our de novo review, we hold that the circuit court erred in finding that it did. We therefore reverse the circuit court's finding that a transfer station is a solid-waste disposal facility within the meaning of section 8-6-222.[3]

### C. The District's Adoption of More Restrictive Standards

LRS South next argues that if this court agrees that a solid-waste transfer station is not a solid-waste disposal facility within the meaning of section 8-6-222, then District Rule 17.02, which sets a more restrictive standard than the Commission's location restriction in Commission Rule 22.902(a)(5), exceeds the District's authority under Arkansas Code Annotated section 8-6-712(b) as to transfer stations. Thus, LRS South argues, the circuit court erred in applying the more restrictive standard to its proposed transfer station.

The District responds that (1) District Rule 17.02, which establishes the two-mile restriction at issue here, was based on its interpretation that sections 8-6-222 and 8-6-724 (Repl. 2022) include "all solid waste facilities"; and (2) its Rules are consistent with Commission Rules that discuss permits for landfills and transfer stations in the same section and allow District authorization for rules and standards more restrictive than those granted by statute.

The circuit court's ruling in this case was limited to its finding that a transfer station is a solid-waste disposal facility and that section 8-6-222 "allows the defendant to adopt more

---

[3]In light of our reversal on LRS South's plain-meaning argument, we need not address LRS South's alternative argument that, even if the statutes are ambiguous, the circuit court failed to properly apply the principles of statutory construction.

restrictive standards to both solid waste disposal sites and to solid waste disposal facilities which the defendant has done." For the reasons explained above, the circuit court's ruling in which it allowed "more restrictive standards" was based on an erroneous conclusion that a solid-waste transfer station is a solid-waste disposal facility within the meaning of section 8-6-222. Because the ruling challenged in this point on appeal flows from the circuit court's erroneous ruling discussed above in the first point, we decline to address this point and remand for proceedings consistent with our holding on point one.

### III. *Conclusion*

For the reasons stated above, we reverse the circuit court's order and remand for further proceedings.

Reversed and remanded.

HIXSON and MURPHY, JJ., agree.

*Wright, Lindsey & Jennings LLP*, by: *Mark H. Allison* and *Eric Berger*, for appellant.

*Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, by: *Curtis E. Hogue* and *Grace K. Johnson*, for appellees.